IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-5546 |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiff Thomas Gebka ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

2. In violation of the TCPA, State Farm via third-parties acting on its behalf made telemarketing calls to Mr. Gebka's cellular telephone number for the purposes of advertising State Farm's goods and services without express consent which is prohibited by the TCPA.

3. Mr. Gebka never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers en masse, the Plaintiff brings this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5. This is an action for injunctive relief, statutory damages, and actual damages based on these unlawful telemarketing calls (commonly referred to as "robocalls") in violation of the federal TCPA.

## THE PARTIES

6. Thomas Gebka is an individual residing in Hendersonville, Tennessee.

7. State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") is an Illinois corporation doing business in Illinois with its principal place of business in Bloomington, Illinois.

## JURISDICTION AND VENUE

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

9. The events described herein relate to unlawful telemarketing calls to Plaintiff's cellular telephone number.

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant does business in this District and thus resides in this District within the meaning of 28 U.S.C. § 1391(c)(2).

## THE TELEPHONE CONSUMER PROTECTION ACT

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

2

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, artificial and prerecorded voice telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

<u>The TCPA Prohibits Artificial and Prerecorded Voice Telemarketing Calls</u>

13. The TCPA makes it unlawful to make any telemarketing call, using an artificial or prerecorded voice, to any cellular telephone number without prior express written consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii), (a)(2). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 C.F.R. § 64.1200(a)(1)-(2). *See* 47 U.S.C. § 227(b)(3).

<u>The TCPA Prohibits Calling Numbers on the National Do Not Call Registry</u>

14. The TCPA also prohibits making advertising or telemarking calls to any telephone number that is registered on the National Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

15. The TCPA provides a private cause of action to persons who receive more than one call on behalf of the same entity within any 12-month period in violation of 47 C.F.R. § 64.1200(c)(2). *See* 47 U.S.C. § 227(c)(5).

<u>Sellers like State Farm Are Liable under the TCPA</u>

16. The FCC has held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (¶ 10) (Jan. 4, 2008) (specifically recognizing "on behalf of" liability

in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

17. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts-out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013).

18. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *In re DISH Network, LLC*, 28 FCC Rcd at 6586 (¶ 34).

19. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *In re DISH Network, LLC*, 28 FCC Rcd at 6587 n.107.

20. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on

the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*In re DISH Network, LLC*, 28 FCC Rcd at 6592 (¶ 46).

21. The Federal Communication Commission has confirmed sellers such as State Farm may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## **THE UNLAWFUL CONDUCT**

22. Plaintiff restates the above and foregoing as though fully restated herein.

23. State Farm authorizes its agencies (hereinafter, "State Farm agencies") to act as agents of State Farm for the purpose of soliciting, selling, and servicing State Farm insurance, and the State Farm agencies consent to so act.

24. State Farm agencies have State Farm's actual and apparent authority to appoint subagents for solicitation and telemarketing purposes.

25. State Farm agencies appoint third-party telemarketing vendors as subagents to solicit people to purchase State Farm insurance.

26. Specifically, State Farm agencies engage third-party telemarketing vendors to make telemarketing calls to generate "leads" to purchase State Farm insurance.

5

27. The third-party vendors directed call centers to make telemarketing calls to generate the "leads" to purchase State Farm insurance.

28. The lead-generation process involves making telemarketing calls, without prior express written consent, invitation or permission, for the purpose of advertising and encouraging the purchase of State Farm insurance.

29. The State Farm agencies accepted the lead information, spoke to those consumers about purchasing State Farm insurance, and provided some of them quotes for State Farm insurance.

30. State Farm and the State Farm agencies knowingly accepted business originated through these telemarketing calls.

**The Calls to Plaintiff**

31. Plaintiff registered his residential telephone number on the National Do Not Call Registry more than 31 days prior to the calls at issue.

32. On April 15, 2020, Plaintiff received a call on his cellular telephone number from caller ID (630) 772-5479.

33. No company name was transmitted via Caller ID.

34. At the outset of the call, there was a brief pause of dead air, then a live representative came on the line and asked Plaintiff if he was interested in auto or homeowners insurance quotes. Plaintiff listened to the entire telemarketing pitch to confirm who was behind the call. After confirming Plaintiff's email address and zip code, the telemarketer told Plaintiff that someone would be calling him back.

35. Approximately thirty minutes after Plaintiff terminated the telemarketing call, a State Farm agency in Nolensville, Tennessee sent Plaintiff an email containing State Farm's

corporate name and trademarked logo, a hyperlink to a quote for State Farm insurance, and a hyperlink to State Farm's website and State Farm's various social media handles.

36. On April 16, 2020, the same State Farm agency in Nolensville, Tennessee that had emailed Plaintiff the insurance quote one day earlier called Plaintiff's cellular telephone number. Plaintiff did not answer this call and the State Farm agency left Plaintiff a voicemail about the insurance quote.

37. On July 21, 2020, Plaintiff received a call on his cellular telephone number from caller ID (630) 994-9685 using an artificial and/or prerecorded voice.

38. A prerecorded/artificial voice asked if Plaintiff was interested in an auto insurance quote.

39. Then the system paused and waited for a prompt from Plaintiff.

40. In order to determine who made the artificial and/or prerecorded voice call, Plaintiff said yes to the prerecorded/artificial voice prompt.

41. After Plaintiff said yes to the prerecorded/artificial voice prompt, the system paused while it analyzed Plaintiff's response. Then the system asked for Plaintiff's name, zip code, and the make and model of his automobile.

42. Then the system paused and waited for a prompt from Plaintiff.

43. After Plaintiff recited the requested information, the system paused while it analyzed Plaintiff's response. Then the system asked if Plaintiff was interested in receiving quotes for other types of insurance.

44. The following day, July 22, 2020, a State Farm agency in Franklin, Tennessee called Plaintiff's cellular telephone number. Plaintiff answered the call and asked the State Farm agent how he obtained Plaintiff's phone number. The State Farm agent said he received it from a

7

lead source called Everquote.

45. During the July 22, 2020 call where Plaintiff complained he did not consent to the prerecorded call, the State Farm agent asked Plaintiff if wanted to be added to their internal do-not-call list, and Plaintiff said yes.

46. Following the July 22, 2020 call, Plaintiff's cellular telephone number was not added to Defendant's or its callers' internal do-not-call lists, they did not create or maintain any record of Plaintiff's request not to receive further telemarketing calls, and they did not honor Plaintiff's do-not-call request.

47. Instead, Plaintiff continued to receive telemarketing calls promoting State Farm's insurance products and services.

48. On November 2, 2020, the same State Farm agency in Franklin, Tennessee called Plaintiff's cellular telephone number again. The State Farm agent promoted State Farm insurance products and services, and said she would email Plaintiff an updated insurance quote. Plaintiff asked the State Farm agent how she obtained Plaintiff's phone number, and the agent said she received it from a lead source called Everquote.

49. On December 7, 2020 Plaintiff received yet another call on his cellular telephone number from the same State Farm agency in Franklin, Tennessee about a quote for State Farm insurance. Plaintiff again told the State Farm agent he was not interested and Plaintiff asked the agent to place him on their do not call list. The agent said that she would do so.

50. On February 25, 2021, Plaintiff received yet another call on his cellular telephone number using an artificial and/or prerecorded voice, this time from caller ID (630) 890-4056.

51. The same prerecorded/artificial voice message from the July 21, 2020 telemarketing call asked if Plaintiff was interested in an auto insurance quote.

8

52. Then the system paused and waited for a prompt from Plaintiff.

53. In order to determine who made this artificial/prerecorded voice call, Plaintiff said yes to the artificial/prerecorded voice prompt.

54. After Plaintiff said yes to the artificial/prerecorded voice prompt, the system paused while it analyzed Plaintiff's response. Then the system asked for Plaintiff's name, zip code, and the make and model of his automobile.

55. Then the system paused and waited for a prompt from Plaintiff.

56. After Plaintiff recited the requested information, the system paused while it analyzed Plaintiff's response. Then the system asked if Plaintiff was interested in receiving quotes for other types of insurance.

57. The July 21, 2020 and February 25, 2021 calls both asked the same questions, phrased in the same way, in the same sequence, using the same prerecorded/artificial voice, with identical intonation.

58. During the July 21, 2020 and February 25, 2021 calls, the voice, after asking each question, paused and, without making any other comments or sounds, waited for Plaintiff to speak, and there was complete silence during each pause without the sea of voices or other background noise of a call center.

59. During the July 21, 2020 and February 25, 2021 calls, after each time Plaintiff spoke, the system paused while the program analyzed what Plaintiff had said and determined what to say or ask Plaintiff next. This indicates both calls used an artificial and/or prerecorded voice.

60. The template-based, generic content of the messages that played during the July 21, 2020 and February 25, 2021 calls also indicates both calls used an artificial and/or prerecorded voice.

61. At no time did Plaintiff provide express written consent authorizing State Farm, any State Farm agency, or anyone else to deliver or cause to be delivered advertisements or telemarketing messages to his cellular telephone number using an artificial or prerecorded voice.

62. At no time did Plaintiff sign a written agreement with State Farm, any State Farm agency, or anyone else containing Plaintiff's cellular telephone number and stating Plaintiff agrees to be contacted on that number by State Farm or any State Farm agency.

## STATE FARM'S LIABILITY

63. State Farm is extensively involved in the operations of State Farm agencies.

64. State Farm requires State Farm agencies to follow detailed standards set by State Farm.

65. State Farm has the ability, at any time without prior notice to State Farm agencies, to change the standards State Farm agencies must follow.

66. State Farm has the right to monitor the State Farm agencies' compliance with State Farm's standards and terminate the agency relationship for noncompliance.

67. State Farm authorized, advised, and encouraged State Farm agencies to use third-party vendors to generate "leads" to purchase State Farm insurance policies, including by making telemarketing calls, and recommended that they do so.

68. State Farm knew State Farm agencies were using third-party vendors to make telephone solicitation calls to generate leads to purchase State Farm insurance.

69. The State Farm agencies specified to the third-party telemarketing vendors the geographic parameters for the leads they could telemarket to, the specific type(s) of State Farm insurance to promote, the number of leads to generate, and the times in which to call.

70. The State Farm agencies had the right to terminate their relationships with the third-

party telemarketing vendors.

71. The State Farm agencies maintained ultimate discretion about whether to accept any given lead from the third-party vendors and provide a lead a quote for State Farm insurance.

72. State Farm insurance policies were sold to leads generated by the illegal telemarketing calls, thereby enlarging State Farm's customer base, and insurance premiums were collected for those insurance policies.

## CLASS ALLEGATIONS

73. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

74. The classes of persons Plaintiff proposes to represent are tentatively defined, subject to amendment, as follows:

> **Artificial/Prerecorded Voice Class**
> Each person within the United States: (1) to whose cellular telephone number; (2) Defendant or anyone acting on Defendant's behalf placed a non-emergency telephone call; (3) promoting Defendant's products or services; (4) using an artificial or prerecorded voice; (5) without prior express written consent of the called party to call said telephone number; (6) at any time from four years before the date this Complaint was filed through trial.

> **Do Not Call Class**
> Each person in the United States: (1) to whose telephone number Defendant or anyone acting on Defendant's behalf initiated two or more telephone solicitations during a 12-month period; (2) where the person's telephone number was registered on the National Do Not Call Registry more than thirty-one days before the telephone solicitations; (3) at any time from four years before the date this Complaint was filed through trial.

75. Upon information and belief, the members of the classes received one or more automated calls for telemarketing purposes without having given prior express consent.

11
134979_3

76. The classes as defined above are identifiable through phone records, phone number databases, and business records.

77. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals per day. Individual joinder of these persons is impracticable.

78. Plaintiff is a member of the proposed classes.

79. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a) Whether Defendant violated the TCPA;

    b) Whether the calls used an artificial and/or prerecorded voice;

    c) Whether the calls constitute telephone solicitations;

    d) Whether the calls constitute telemarketing;

    e) Whether the calls included or introduced an advertisement;

    f) Whether Defendant, the State Farm agencies, the third-party vendors, and/or any subcontractors who placed the calls instituted procedures for maintaining an internal do-not-call list of persons who requested not to receive telemarketing calls by or on behalf of that person or entity;

    g) Whether the conduct of Defendant, the State Farm agencies, the third-party vendors, and/or any subcontractors who placed the calls was knowing and/or willful;

    h) Whether State Farm agencies are agents of State Farm;

    i) Whether State Farm ratified the conduct of the State Farm agencies;

    j) Whether the third-party vendors are agents of the State Farm agencies

and/or State Farm;

k) Whether the State Farm agencies and/or State Farm ratified the conduct of the third-party vendors;

l) Whether the third-party vendors are subagents of State Farm and/or the State Farm agencies;

m) Whether Defendant is liable for the calls and/or other acts and omissions of the State Farm agencies or the third-party vendors; and

n) Whether the Plaintiff and the class members are entitled to statutory damages and/or injunctive relief because of Defendant's actions.

80. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and its agents and subagents, and are based on the same legal and remedial theories.

81. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions.

82. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant, its agents and subagents, the National Do Not Call Registry, and others.

83. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and

deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

84. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

85. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the putative Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

86. The identities of the class are readily identifiable from records maintained by Defendant, its agents and subagents, the National Do Not Call Registry, and others.

## COUNT I
### Violations of the TCPA
### Artificial/Prerecorded Voice Calls to Cellular Numbers

87. Plaintiff and the class members re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

88. Defendant or someone acting on Defendant's behalf made at least one call to Plaintiff's cellular telephone numbers using an artificial or prerecorded voice.

89. The calls to Plaintiff's cellular telephone number were not made for emergency purposes within the meaning of the TCPA.

90. The calls to Plaintiff's cellular telephone number advertised the commercial availability or quality of Defendant's insurance goods and/or services.

91. The calls to Plaintiff's cellular telephone number "included or introduced an

advertisement" within the meaning of the TCPA.

92. The calls to Plaintiff's cellular telephone number were for the purpose of encouraging the purchase or rental of, or investment in, Defendant's insurance goods and/or services.

93. The calls to Plaintiff's cellular telephone number constitute "telemarketing" within the meaning of the TCPA.

94. Neither Defendant nor any entity calling on behalf of Defendant had Plaintiff's prior express written consent to make the calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice.

95. Neither Defendant nor any entity calling on behalf of Defendant had Plaintiff's "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(8), to make the calls to Plaintiff's cellular telephone number.

96. Plaintiff's telephone number is, and at all times pertinent was, assigned to a cellular telephone service within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)-(2).

97. Defendant violated the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii), each time Defendant or someone acting on Defendant's behalf made a non-emergency call to Plaintiff's cellular telephone number using an artificial or prerecorded without Plaintiff's prior express consent.

98. Defendant violated the TCPA implementing regulations, including 47 C.F.R. § 64.1200(a)(2), each time Defendant or someone acting on Defendant's behalf made a call to Plaintiff's cellular telephone number that included or introduced an advertisement, or constituted telemarketing, using an artificial or prerecorded voice without Plaintiff's prior express written

134979_3

consent.

99. Defendant's artificial or prerecorded voice calls invaded Plaintiff's and the class members' privacy and violated their legal rights under federal law to not be subjected to such unlawful and anonymous automated calls.

100. The artificial or prerecorded voice calls to Plaintiff's and the class members' cellular telephone numbers, and the acts and omissions as to those calls described herein, were deliberate and conscious acts or omissions.

101. The artificial or prerecorded voice calls to Plaintiff's and the class members' cellular telephone numbers were willful or knowing as those terms are defined in the Communications Act of 1934 and administered by the FCC. Therefore it is within the Court's discretion to award Plaintiff and the class members up to three times the available statutory damages as prescribed under 47 USC § 227(b)(3) and 47 USC § 227(c)(5).

102. As a result of Defendant's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

103. Plaintiff and the class members are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA in the future.

## COUNT II
### Violations of the TCPA
### Advertising/Telemarketing Calls to
### Numbers on the National Do Not Call Registry

104. Plaintiff and the class members re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

105. It is a violation of the TCPA for any person or entity to initiate any telephone solicitation to a residential or cellular number registered on the National Do Not Call Registry.

134979_3

*See* 47 C.F.R. § 64.1200(c)(2); *id.* at § 64.1200(e).

106. Defendant or someone acting on Defendant's behalf made two or more telephone solicitation calls to Plaintiff's and the putative class members' telephone numbers that were registered on the National Do Not Call Registry for more than 31 days prior to the calls.

107.

108. Plaintiff and members of the putative Class have received more than one telephone call made by or on behalf of Defendant within a twelve (12) month period in violation of the regulations set forth in 47 C.F.R. § 64.1200.

109. As a result of Defendant's conduct and pursuant to 47 U.S.C. § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff Thomas Gebka, on behalf of himself and the other members of the Classes, prays for the following relief:

    a) A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b) An injunction prohibiting Defendants from initiating telephone solicitations to persons who have registered their telephone numbers with the National Do Not Call Registry;

    c) An award of actual damages;

    d) An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

    e) An award of treble damages, as provided by statute, of up to $1,500.00 for

134979_3

      Plaintiff and each Class member for each and every call that violated the TCPA;

f) An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

g) Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: October 10, 2022

      Respectfully Submitted,

      THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

      By:  /s/ Keith J. Keogh

      Keith J. Keogh
      Theodore H. Kuyper
      KEOGH LAW, LTD.
      55 W. Monroe Street, Suite 3390
      Chicago, Illinois 60603
      (312) 726-1092
      (312) 726-1093 (fax)
      keith@keoghlaw.com
      tkuyper@keoghlaw.com

      ***Attorneys for Plaintiff and the Putative Class***